**ELECTRONIC LABORATORY SUPPLY CO. and Jack Snyderman, Appellants,**

v.

**Raymond CULLEN, Ronald Hauben, and Joseph Wolfson.**

Superior Court of Pennsylvania.

Argued Nov. 5, 1997.

Filed April 27, 1998.

Wayne M. Thomas, Philadelphia, for appellants.

Patrick W. Kittredge, Philadelphia, for appellees.

Before CIRILLO, President Judge Emeritus, and JOHNSON and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

Appellants Electronic Laboratory Supply Co. ("ELSCO"), and Jack Snyderman, appeal from the order entered in the Court of Com-

mon Pleas of Philadelphia County granting summary judgment in favor of Appellees Raymond Cullen, Ronald Hauben, and Joseph Wolfson (collectively referred to as the "attorney defendants"). We affirm.[1]

The trial court aptly summarizes the protracted litigation and involved facts underlying this case:

> During the 1980's, Plaintiff Electronic Laboratory Supply Company, Inc. ("ELSCO") purchased large quantities of scrap material from Motorola, Inc., which ELSCO then smelted (or caused to be smelted) to reclaim various metal ingredients, both precious (e.g. gold, silver) and non precious (e.g. copper). Plaintiff Snyderman is ELSCO's president.

> In early 1988, Motorola became concerned, because it believed that material it had sold as scrap—perhaps to ELSCO—had turned up intact and for sale in Asia.

> Motorola then conducted two audits of ELSCO's operation, and concluded that ELSCO was the source—or at least *a* source—of the diverted scrap products, and filed suit in Federal Court of the Eastern District of Pennsylvania against ELSCO, Snyderman and others, on March 23, 1988, claiming—among other things—that ELSCO was "passing off" inferior Motorola scrap as first-quality Motorola parts, in violation of the Lanha[m] Act, 15 U.S.C. § 1051, *et seq.* Subsequently, Motorola moved for the *ex parte* issuance of a Writ of Seizure, pursuant to the Lanha[m] Act, and the Pennsylvania Rules of Civil Procedure applicable to the *ex parte* issuance of such writs.

\*   \*   \*

After the seizure occurred, ELSCO and Snyderman counterclaimed in Federal Court against Motorola and its officers ... and the attorneys who procured the *ex parte* seiz[ure] order on Motorola's behalf. Over the course of the next few years, all of Motorola's claims against ELSCO and Snyderman were dismissed, leaving active only Motorola's claims against other defendants not relevant to this discussion, and ELSCO's and Snyderman's claims against the Motorola parties and counsel.

Subsequently, in May 1991 the Motorola parties, ELSCO and Snyderman (and the other defendants in Motorola's original suit) entered into a settlement agreement, by which Motorola agreed not to appeal the dismissal of the original suit as against ELSCO and Snyderman, to pay ELSCO and Snyderman $259,206.00, and to dismiss the *Motorola v. ELSCO, et al* action as to all defendants, with prejudice.

In return for dismissal of the Motorola suit and the payment described above, ELSCO and Snyderman dismissed the portion of *ELSCO, et al vs. Motorola, et al* directed against the Motorola parties, with prejudice, but specifically preserved its claims against Motorola's counsel, in the original action, defendants Cullen, Hauben and Wolfson.

Subsequently, the District Court, on December 30, 1991, dismissed ELSCO's claims for wrongful seizure pursuant to the Lanham Act, violation of due process, and unreasonable seizure as against the attorney defendants. Since those were the only "federal question" claims remaining—and because there was no diversity of citizenship between ELSCO and the lawyer defendants—the District Court dismissed the

1. Appellees have filed a motion to strike Appellants' reply brief, or, in the alternative, to strike portions of Appellants' reply brief due to the brief's length. Specifically, Appellees take issue with the "lengthy footnotes" contained within the reply brief.

Pursuant to Pennsylvania Rule of Appellate Procedure 2135 "briefs (exclusive of pages containing table of contents, tables of citations and any addendum containing opinions, etc., or any other similar supplementary matter provided for by these rules) shall not exceed ... 15 pages of conventional typographical printing." Pa.R.A.P. 2135(2). Presently, Appellants' reply brief con-

tains exactly 15 conventionally-typed pages (excluding twenty pages of exhibits that consist of a motion and memorandum of law). Accordingly, we do not find that Appellants have violated either the spirit or the letter of Rule 2135. While the brief does contain a number of footnotes, it does not rise to the level of a violation of our appellate rules such that we find it necessary to strike all or a portion of the reply brief. Furthermore, we do not agree with Appellees' claim that Appellants have merely restated matters already raised in their original appellate brief. We, therefore, **DENY** Appellees' motion to strike.

remaining state law claims (for wrongful use of Civil Proceedings) without prejudice—declining to exercise "pendent jurisdiction" over them—for transfer to State Court.

ELSCO docketed the transferred claims in this Court on February 26, 1992, meanwhile appealing dismissal of its "federal question" claims against the lawyer defendants to the Third Circuit Court of Appeals.

The Third Circuit affirmed the dismissal of the Lanham Act claims, holding that only the Plaintiff, and not its attorneys, could be liable for wrongful seizure under the Lanham Act.

After transferring the case to state court, the attorney defendants filed a motion for summary judgment in the Court of Common Pleas of Philadelphia County asserting that the federal proceedings did not terminate in favor of the accused (ELSCO), and, therefore, that ELSCO had failed to state a claim for wrongful use of civil process. The motion was denied and the state claims were set for trial. Thereafter, another trial court judge granted a second summary judgment motion filed by the attorney defendants. This appeal followed.

On appeal, ELSCO and Snyderman present the following issues for our consideration:

(1) Did the Court err in entering summary judgment in favor of defendants after defendants' motion for summary judgment raising the same issues had previously been denied by another judge?

(2) Did the Court err in finding that settlement of the underlying claims between plaintiffs and the Motorola parties released plaintiffs' claims against those defendants as a matter of law, notwithstanding the express language to the contrary in the settlement agreement?

(3) Did the proceedings in the United States District Court terminate in favor of plaintiffs so that an action under the Dragonetti Act, 42 Pa.C.S.A. § 8351, *et seq.*, could be maintained by plaintiffs?

■ Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa.Super. 464, 470, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2, 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

■ Normally, where a motion has been preserved and decided and where no new facts are presented in a second motion seeking the same relief, the court's decision on the first motion should be followed based on considerations of judicial economy and efficiency. *Drapeau v. Joy Technologies, Inc.,* 447 Pa.Super. 560, 670 A.2d 165 (1996), *citing Harrity v. Medical College of Pennsylvania Hospital,* 439 Pa.Super. 10, 653 A.2d 5 (1994). This rule prevents forum shopping because without this rule, the same issue could be raised repeatedly before different judges of the same court until a litigant finds a judge sympathetic to his or her position. *Id.* See *Yudacufski v. Commonwealth of Pa. Dep't of Transportation,* 499 Pa. 605, 612, 454 A.2d 923, 926 (1982) ("[a]bsent the most compelling circumstances, a judge should follow the decision of a colleague on the same court when based on the same set of facts.").

■ There is an exception, however, to the rule prohibiting one trial judge from overruling the other. This rule provides that the second judge is authorized to overrule the first if new evidence or newly decided legal authorities compel him or her to do so. *Golden v. Dion & Rosenau,* 410 Pa.Super. 506, 600 A.2d 568 (1991) *citing Vincent v. Fuller Company,* 400 Pa.Super. 108, 582 A.2d 1367 (1990). Courts employing this exception view the following situations as exceptional circumstances which permit a judge to

overrule a prior judge of the same court: (1) where there has been an intervening change in the controlling law; (2) where there has been a substantial change in the facts or evidence giving rise to the dispute in the matter, or (3) where a judge's prior holding was clearly erroneous and would create a manifest injustice if followed. *Riccio v. American Republic Ins. Co.*, 453 Pa.Super. 364, 372, 683 A.2d 1226, 1230 (1996). *See Rosenfield v. Pennsylvania Auto. Ins.*, 431 Pa.Super. 383, 636 A.2d 1138 (1994).

In the present case, the evidence is clear that in December of 1994, the Honorable Joseph D. O'Keefe of the Court of Common Pleas of Philadelphia County denied the defendants' motion for summary judgment; in April of 1997, the Honorable Bernard J. Goodheart, also from the Philadelphia Court of Common Pleas, granted the defendants' second summary judgment motion. The record contains letters to Judge Goodheart, from both appellants' and appellees' counsel, regarding the issues that Judge Goodheart is to "re-examine" in the second summary judgment motion. In appellees' November 17, 1996 reply to a letter written by Judge Goodheart, appellees state:

> I am in receipt of Your Honor's letter of November 20[, 1996] requesting a copy of the settlement agreement and release between plaintiffs and the Motorola parties. As I explained to your law clerk, it appears Your Honor's letter was sent before the "timeline" submitted by Mr. Kittredge [plaintiffs' counsel] on November 22nd which **contains a copy of that agreement** at Tab 21. Since I was not counsel at the time, I have checked the docket entries (Timeline Tabs 32 and 33) and see no record of any courtroom proceeding concerning the May 7th settlement in either of the federal matters.

Accordingly, Judge Goodheart was provided with new evidence, namely the parties' important settlement agreement, when he decided the defendants' second summary judgment motion.

It is equally evident from the record that Judge O'Keefe did not have a copy of the parties' settlement agreement at the time he decided the first summary judgment motion. Neither the defendants' first motion for summary judgment, nor the plaintiffs' response to said motion discuss the settlement agreement and its terms. Moreover, in order to thoroughly and properly analyze plaintiffs' cause of action for wrongful use of civil process it is essential that a court examine the settlement agreement. This agreement will ultimately prove whether the proceedings terminated in ELSCO's favor at the federal level, and, therefore, whether an essential element of a wrongful use cause of action has been stated.[2]

Further, we note that Judge Goodheart did not decide the second motion without first giving thought as to whether it was appropriate judicial action in light of Judge O'Keefe's prior summary judgment ruling. Transcribed proceedings from November 18, 1996 reveal that Judge Goodheart determined that "[he could] decide the issue that was already been [sic] decided by Judge O'Keefe. [He could] revisit it at this point." Judge Goodheart made this comment immediately after advising the attorneys that he would need additional documents to decide such motion. Because a trial court may reconsider a summary judgment motion, already decided by a colleague of the same court when the motion contains new evidence or facts of record, this issue is meritless. *Golden, supra.* The trial court did not abuse its discretion in light of the new evidence that was highly relevant to the parties' dispute. *Riccio, supra.*

In their next issue on appeal, Appellants assert that the trial court improperly determined, as a matter of law, that the parties' settlement agreement effectively precluded them from bringing suit for wrongful use of civil proceedings against the attorney-defendants. In effect, appellants claim that the court incorrectly viewed the relationship between appellees (Motorola and the attorney defendants) as that of principal-agents and,

---

**2.** One of the elements which must be proven in order to bring a successful wrongful use of civil process action is that "the proceedings terminat-

ed in favor of the person [ELSCO] against whom they are brought." 42 Pa.C.S.A. § 8351(a)(2).

therefore, could not find the agents (attorney-defendants) potentially liable where their principal (Motorola) has been released from all future suits under the parties' settlement agreement.

The Dragonetti Act, 42 Pa.C.S.A. § 8351, permits one who is sued without probable cause to sue the original plaintiff in turn. *Bannar v. Miller*, 701 A.2d 232 (Pa.Super.1997). *See Mi–Lor, Inc. v. DiPentino*, 439 Pa.Super. 636, 654 A.2d 1156 (1995) (wrongful use of process is a tort which arises when a party has instituted a lawsuit with malicious motive and a lack of probable cause). Accordingly, an attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable under the Dragonetti Act. *Adelman v. Rosenbaum*, 133 Pa.Super. 386, 3 A.2d 15 (1938), cited in *Dietrich Indus., Inc. v. Abrams*, 309 Pa.Super. 202, 455 A.2d 119 (1982) (appellee-attorney was not invulnerable to allegations of wrongful use of process merely because he was counsel to the party of record).

A wrongful use of civil process action cannot be instituted by one who was not a party to the underlying action; however, the fact that a non-party to the underlying action is sued as a defendant for wrongful use of process is of no significance as long as the elements to a Dragonetti Act claim are established. *Weiss v. Equibank*, 313 Pa.Super. 446, 460 A.2d 271 (1983). Pursuant to the Dragonetti Act, a person is liable for the tort of wrongful use of civil process under the following circumstances:

(a) **Elements of action.**—A person who takes part in the procurement, **initiation** or continuation **of civil proceedings** against another is subject to liability to the other for wrongful use of civil proceedings if:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are heard; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351 (a) (emphasis added); *Bannar, supra* ; *Robinson v. Robinson*, 362 Pa.Super. 568, 525 A.2d 367 (1987); *Dietrich Indust. v. Abrams*, 309 Pa.Super. 202, 455 A.2d 119 (1982). Comment a to the *Restatement (Second) of Torts* § 674, which has been cited with approval in several other cases involving claims of wrongful use of civil process, defines the meaning of the phrase "initiation of proceedings." *Georgiana v. UMW*, 392 Pa.Super. 58, 62, 572 A.2d 232, 234 (1990). *See Rosenfield*, 431 Pa.Super. at 389, 636 A.2d at 1141 ("Pennsylvania law regarding the wrongful use of civil proceedings is in conformity with the Restatement of Tort, Second, § 674."). The comment defines the term as someone who "sets the machinery of the law in motion, whether he acts in his own name or in that of a third person, or whether the proceedings are brought to enforce a claim of his own or that of a third person." *Restatement (Second) of Torts* § 674 cmt. a (1977).

Looking to section 674 and its comment for guidance, we conclude that in order to bring a wrongful use of civil process action, the plaintiff is not required to include any and all third parties or principals which may have had a connection to the real party who "initiated the proceedings" in the underlying action. Rather, the real party's potential liability may be based upon his or her own personal and wrongful actions. Consequently, even though the attorney-defendants may have been enforcing a legal claim in the interest of their employer, Motorola Inc., they were properly sued as defendants in their individual capacities in the instant wrongful use of civil proceedings case. We find, therefore, that the trial court erred in holding that appellants did not have a viable cause of action against the attorney-defendants merely because Motorola settled its claims against appellants. Appellants had a right to bring a wrongful use of civil process claim against the attorney-defendants separate and apart from such negotiated settlement of the underlying case. 42 Pa.C.S.A. § 8351(a).

Having found that Appellees are proper defendants in Appellants' wrongful use of civil process action, we must now determine whether the Appellants successfully established the enumerated elements for a Dragonetti Act claim. *Weiss, supra.* To this end, appellants assert that the trial court improperly determined that the proceedings did not terminate in favor of ELSCO, and, thus, that the Appellees were entitled to judgment as a matter of law.

In the present case, the appellants' cause of action for malicious abuse of process/intentional misuse of process was converted from a federal claim to a state claim cognizable under the Dragonetti Act, 42 Pa.C.S.A. § 8351. This conversion occurred when the federal court allowed ELSCO to amend its complaint upon removal to state court. In order to determine whether the proceedings were properly terminated in favor of ELSCO, we must determine whether the proceedings that terminated at the federal court level constituted "termination in favor of ELSCO." In other words, whether the settlement agreement entered into between the parties is considered sufficient "termination" for purposes of a wrongful use of process action.

In the final settlement agreement the parties acknowledge that the federal court's order and final judgment dismissed with prejudice Motorola's claims against ELSCO and the other defendants. The document further states that the agreement "represents a compromise and satisfaction of disputed claims and shall constitute a final and binding resolution of all the disputes, rights and obligations ... that could have been raised by the parties in the litigation." Motorola also agreed that it would not attempt to appeal, vacate or modify the judgment entered in favor of defendants Snyderman and ELSCO. Finally, Motorola acquiesced in signing a stipulation and order dismissing with prejudice all claims against ELSCO; nothing in the agreement, however, was intended to "diminish or extinguish the claims of ... ELSCO against [the attorney] defendants."

■ In *Dravo Corp. v. Ioli,* 401 Pa.Super. 124, 129, 584 A.2d 1011, 1013 (1991), our court "acknowledge[d] that, as a matter of law, a compromise does indeed fail to meet the requirements of favorable termination [for purposes of a wrongful use of civil process cause of action], thereby rendering summary judgment appropriate." *Id.* Furthermore, "whether withdrawal or an abandonment constitutes a final termination of a case in favor of the person against whom the proceedings are brought ... depends on the circumstances under which the proceedings are withdrawn." *Rosenfield v. Pennsylvania Auto. Ins.,* 431 Pa.Super. 383, 389, 636 A.2d 1138, 1142 (1994), *citing Restatement (Second) of Torts* § 674 cmt. j (1977). Additionally, withdrawals of proceedings as a result of compromise or agreement, or the impossibility of bringing an accused to trial, do not constitute a termination favorable to the party against whom proceedings have been brought. *Id.*

In *Georgiana v. UMW,* 392 Pa.Super. 58, 572 A.2d 232 (1990), the trial court dismissed a complaint filed by Mr. and Mrs. Georgiana, (h/w), that asserted, *inter alia,* a wrongful use of civil process action against the United Mine Workers of America (UMW). The UMW had originally sued the Georgianas, accusing Mrs. Georgiana of fraud. The fraud charges were ultimately dropped when the parties entered into a settlement agreement. When the trial court found that the settlement agreement did not constitute a termination in favor of the Georgianas, it dismissed the Georgianas' complaint alleging wrongful use of civil process.

On appeal, Mr. Georgiana asserted that his wife, alone, entered into the settlement agreement with UMW. Accordingly, he claimed that the trial court should not have dismissed his interest in the wrongful use of process action by finding that he was bound by the settlement. The trial court recognized that in some circumstances a jury could infer that settlement by one party may be "effective" with regard to another party, such that the settlement of the suit does not represent a termination in *favor* of the other party for purposes of an action under the Dragonetti Act. *Georgiana,* 392 Pa.Super. at 64, 572 A.2d at 235 (emphasis in original). In fact, the court acknowledged that a husband-wife relationship could raise such an infer-

ence of a settlement as effective on both parties. Finding that the issue was one that should have gone to a factfinder, the court reversed its dismissal of the Georgianas' complaint and remanded for a determination of whether the husband was effectively bound by the settlement for purposes of a viable cause of action for wrongful use of civil proceedings.

In *Georgiana*, the court interpreted the civil abuse of process element that requires "termination in favor of the person against whom [the proceedings] are brought" by looking to section 660 of the *Restatement (Second) of Torts*. Section 660 governs "indecisive termination of [criminal] proceedings." While there is an obvious distinction between unjustifiable litigation in a civil versus a criminal proceeding, comment j of section 674 directs one to section 660 in order to "determin[e] the effect of withdrawal" in a wrongful use of civil process case.

■ Section 660 of the *Restatement (Second) of Torts* states that a plaintiff has not made out a successful cause of action for criminal malicious prosecution where the charge against the plaintiff was withdrawn or abandoned pursuant to an agreement or compromise. *Restatement (Second) of Torts,* § 660. Under such circumstances the proceeding is not considered to have "terminated in favor of the accused"—a phrase mirroring the analogous civil element in a wrongful use of process action. In a situation where an accused has accepted a compromise with the prosecution under section 660, the comment states that "the fact of compromise indicates that the question of [the accused's] guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." *Restatement (Second) of Torts* § 660 cmt. on clause (a). Similarly, in the parties' present agreement to settle and compromise their federal civil action, the parties jointly agreed to end the proceedings in a non-litigious nature; the liability of the defendant, therefore, was never legally determined by a fact-finder. In such circum-

stances we do not consider it a "favorable termination."

We glean from both *Georgiana* and the various *Restatement* sections that settlement agreements are often not considered favorable termination for purposes of a wrongful use of civil process action. In the present case, there is clear evidence in the record that the parties truly settled their claims—the settlement agreement indicates that the agreement "represents a compromise and satisfaction of all disputed claims." Moreover, the trial court had the parties' entire settlement agreement before it when deciding the summary judgment motion. *Cf. Dravo supra* (summary judgment inappropriately granted by trial court where appellee failed to identify any compromise and where the evidence showed that no affidavits were presented concerning the nature of such a compromise; court could not term resolution of original case a "compromise" such that it would show that the proceedings did not terminate in favor of the accused for purposes of wrongful use of civil process). Accordingly, we find that the proceedings did not terminate in ELSCO's favor; when the federal district court dismissed ELSCO's federal claims against the attorney defendants with prejudice, the court determined that no genuine issue of material fact existed in the case at bar. 42 Pa.C.S.A. § 8351(a)(2); *see Rosenfield* (where trial court granted motion for summary judgment in favor of plaintiffs in underlying lawsuit, where such lawsuit was voluntarily withdrawn, court found that defendants failed to state a claim for wrongful use of civil process because prior lawsuit was not terminated in favor of defendants). More important, however, is the fact that both parties agreed to settle the case; under such circumstances, ELSCO's liability was never legally determined. Summary judgment was properly granted; it is clear that Appellees were entitled to judgment as a matter of law. *Merriweather, supra.*

Order affirmed.[3]

JOHNSON, J., files a Dissenting Opinion.

---

**3.** While we recognize that federal district court cases are not binding law on our state appellate court, we refer to a recently filed United States

District Court for the Eastern District of Pennsylvania case which is in accord with our resolution of Appellants' final issue. In *Segen v. Rutter, et*

JOHNSON, Judge, dissenting:

I agree with much of the law as stated in the Majority Opinion. However, based upon the unique facts that are presented in this case, I cannot concur in the determination that the trial court properly granted summary judgment in favor of the attorney defendants. I would vacate the judgment and remand this action for trial. I therefore cannot join the Majority Opinion.

First, I cannot agree that the Honorable Bernard J. Goodheart was presented with any "new facts" such that a revisiting of the summary judgment question was appropriate. The Honorable Joseph D. O'Keefe denied the defendants' summary judgment motion on December 2, 1994. The Majority emphasizes that a copy of the May 1991 settlement agreement was not included in the record before Judge O'Keefe, and therefore concludes that this agreement is "new evidence." However, although the actual agreement was not an exhibit to the motion for summary judgment, the Stipulation and Order relating to the agreement was made a part of the record. This stipulation provides:

It is hereby stipulated that the claims of plaintiffs in this action are dismissed with prejudice as against defendants Motorola Inc., William P. Horrigan, Michael W. Katalinic, and Robert Lewis. This dismissal does not affect in any manner plaintiffs' claims as to remaining defendants Raymond T. Cullen, Ronald B. Hauben, and Joseph Wolfson, which claims are specifically reserved.

Stipulation and Order of Dismissal, Filed May 6, 1991, attached as Exhibit A to Defendants' Motion for Summary Judgment, filed September 30, 1994.

Further, the plaintiffs admitted to Judge O'Keefe that the litigation with Motorola had been resolved by a settlement. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated November 15, 1994, at 3, 15. All parties were aware that, after the District Court had granted summary judgment in Elsco's favor, Elsco had ended the litigation with Motorola via a settlement agreement. All parties also knew of the clause in the agreement that reserved the right to continue the claim against the attorney defendants. Any assertion by the attorney defendants to the contrary is, in my view, disingenuous. I simply cannot agree that the settlement agreement entered into in May 1991, could possibly be a "new fact" in 1997.

I would not reach the merits of this issue, however, because Elsco had failed to preserve the issue for appellate review. The record reflects that the following transpired on November 18, 1996, when Judge Goodheart conducted a pre-trial hearing regarding several motions in limine filed by the parties. Judge Goodheart opined that, "as surely as night follows day," the attorney defendants would present a motion for a compulsory nonsuit following the plaintiff's case, and he therefore suggested to the parties that his considering the matter before trial would save judicial resources as well as the parties' time and money. N.T., November 18, 1996, at 33–34, 38–40, 80.

Specifically, the following transpired:

THE COURT: Just so I understand your position, notwithstanding the fact that you recognize that at the conclusion of your case, after you try your case, there would be a defense motion for compulsory non-

---

al., No. 97–6335, 1998 WL 97259, 1998 U.S. Dist. LEXIS 2306 (E.D.Pa. March 2, 1998), the United States District Court for the Eastern District of Pennsylvania held that it would anticipate that our state supreme court "would rule that a civil settlement is not a favorable termination for purposes of [42 Pa.C.S.A.] § 8351." *Id.* at *1, 1998 U.S. Dist. LEXIS 2306 at *4. In coming to its decision, the District Court "consider[ed] relevant state precedents [sic], analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the issue at hand would be decided." *Id.* at *1, 1998 U.S. Dist. LEXIS 2306 at *2. In *Segen*, the

parties' underlying civil action was terminated by a confidential settlement agreement. *Id.* at *1. The defendants in the original action then initiated an action alleging, *inter alia*, two counts of wrongful use of civil proceedings pursuant to the Dragonetti Act, 42 Pa.C.S.A. § 8351, against the original plaintiffs. *Id.* at *1. Plaintiffs in the original action filed a Rule 12(b)(6) motion to dismiss. *Id.* The court found that the parties' negotiated settlement agreement did not constitute "favorable termination" for purposes of meeting a critical element under the Dragonetti Act. *Id.* The motion to dismiss, therefore, was granted in Plaintiffs' favor.

suit where I will be required to revisit this issue—and I have suggested that you allow this issue to be visited at this point—and I'm suggesting we do it this way to save time and money on your part, your client's part, as well as tying up the Court for two weeks or so, as I envision this case could be if all the issues that I anticipate and all the witnesses I anticipate will testify—that you would prefer to proceed to trial and not allow me to decide this issue at this point in time. Because I can't do it once the motion judge has made the decision, I can't take a second crack at it until you rest. I will give you your choice.

(Discussion off the record.)

MR. THOMAS: [Elsco's attorney] I don't have to be hit over the head was [sic] a sledgehammer.

N.T., November 18, 1996, at 38–39. Mr. Thomas then asked if they could argue the motions in limine so that all parties would be prepared for trial. *Id.* at 39. The court responded:

THE COURT: Do you want to do that? You can do that. Look, I'm not predicting you are going to lose on the issue raised by [defense counsel], but if you do, why have the motion in limine?

MR. THOMAS: All right. I have confidence that we aren't going to lose; that's why I would rather not waste this time, and it would assist in preparation knowing what the issues are going to be.

*Id.* at 39–40. At the conclusion of this hearing, Judge Goodheart told the parties, "I can decide the issue that was already been [sic] decided by Judge O'Keefe. I can revisit it at this point." *Id.* at 80.

In order to preserve an issue for appellate review, a party must make a timely and specific objection to the trial court at the appropriate stage in the proceedings. *Boyle v. Steiman*, 429 Pa.Super. 1, 631 A.2d 1025, 1030 (1993). "Where a thorough review of the record discloses no basis to conclude that an appellant preserved an issue raised in his motion for a new trial by a timely or specific objection at trial, such an issue is waived for the purposes of appellate review." *Id.*

Nowhere in the transcript does Elsco lodge an objection to the court's revisiting the summary judgment motion. Nor does Elsco instruct the court to note its exception to the court's actions. Moreover, even if the objection was noted during the above discussion that took place off the record, this will not serve to preserve the issue, as what is not of record does not exist for purposes of review. *See McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 293 A.2d 51 (1972). Elsco's failure to object is therefore fatal to our reviewing the matter on appeal. *Boyle v. Steiman, supra. See also Bannar v. Miller*, 701 A.2d 242, 250 (Pa.Super.1997) (holding that where neither a specific nor a general objection to the court's charge to the jury was raised at trial, the issue was waived on appeal). Although Elsco failed to preserve this issue, I agree that this Court may reach the merits of the remaining issues on appeal.

I also agree with the Majority's conclusion that the trial court erred in holding that this cause of action could not be instituted against the attorney defendants because of the agent/principal relationship between Motorola and the attorney defendants. However, I disagree with the Majority's resolution of the ultimate issue of this case: Did the action below terminate in Elsco's favor such that an action under the Dragonetti Act can be supported? The Majority holds that the Dragonetti claim against the attorney defendants is barred by the settlement agreement. While I agree with the general proposition that an out-of-court settlement of a claim is not a "termination in favor of a party" for our purposes, *see* slip op. at 309–311, I cannot agree that this well-established principle controls the outcome of this case. Specifically, I cannot countenance the Majority's decision to *ignore* the clear language of the settlement agreement that reserves the cause of action against the attorney defendants. In my view, this language should not be dismissed out of hand. Like the Majority, I note that both applicable case law and the Restatement encourage us to consider the circumstances surrounding the settlement of the underlying action when deciding if proceedings are terminated in favor of a litigant. *See* RESTATEMENT (SECOND) OF TORTS § 674 cmt j; *Georgiana v. UMW*, 392 Pa.Super. 58,

572 A.2d 232, 235 (1990)(When determining that wife's settlement of a claim with UMW did not bar husband's action for wrongful use of civil proceedings from going forward, this Court stated that; "we are convinced that the question [of] whether one defendant's settlement of an action should bind another defendant must depend on the particular circumstances surrounding that settlement[.]"). I therefore believe that resolution of this issue requires us to carefully examine the history of this case.

The basis for Elsco's Dragonetti Act claim is the ex parte seizure order filed by the attorney defendants in the District Court on Motorola's behalf on March 23, 1988. Elsco maintains that the application for the seizure filed by the attorney defendants contained statements that the attorney defendants knew to be serious misstatements of fact and law. Elsco asserts that the attorney defendants knew, or were grossly negligent in not knowing, that the application contained these misstatements. This seizure action was undertaken one day after Motorola, through the attorney defendants, had filed its complaint in District Court. *See* Civil Docket Sheet, *Motorola v. Elsco,* docket number 88–2452, entries 1 and 3; R.R. at 361a.

Almost three years after the complaint was filed against Elsco, the District Court granted Elsco's motion for summary judgment in Motorola's action and dismissed all claims against Elsco. Order, Hutton, J., dated January 10, 1991. Three months later, Elsco and Motorola entered into a settlement agreement whereby Motorola agreed to pay Elsco $259,206 in damages and also agreed not to appeal the entry of summary judgment against it in the action docketed at No. 88–2452. Elsco agreed to dismiss the counter suit against Motorola docketed at No. 88–4494 with the following limitation:

> It is the intention of the parties that the remaining defendants in Civil No. 88–4494 (E.D.Pa.) (namely defendants Cullen, Hauben and Wolfson) shall not be dismissed, but shall remain as defendants. Nothing contained in this settlement agreement is *intended to* diminish or extinguish the claims of Snyderman and ELSCO against defendants Cullen, Hauben and Wolfson.

Final Settlement Agreement, April 30, 1991, at 3; R.R. at 267a. Elsco and Motorola filed stipulations with the District Court reflecting the terms of the settlement agreement in May 1991. The action then continued against the attorney defendants under several theories of recovery, which included both federal claims and state law claims. Subsequently, Elsco requested that the District Court reinstate the Dragonetti Act claim against the attorney defendants. In response, the attorney defendants filed a motion for summary judgment, claiming that Elsco had not stated a claim for which relief could be granted.

The District Court handled this turn of events by entering two orders on December 30, 1991. The first order reinstated Elsco's Dragonetti Act claim against the attorney defendants. Order, Hutton, J., December 30, 1991; R.R. at 330a. The second order granted the attorney defendants' request for summary judgment and dismissed with prejudice the federal claims that had been asserted against the attorney defendants. Order, Hutton, J., December 30, 1991; R.R. at 344a. This order also dismissed Elsco's state law claims without prejudice, and permitted Elsco to transfer the matter to the Pennsylvania Court of Common Pleas. *Id.*

Considering the circumstances surrounding Elsco's settlement with Motorola, especially Elsco's careful reservation of its cause of action against the attorney defendants in both the settlement agreement and the stipulations filed with the District Court, I conclude that Elsco's settlement of the underlying claims with Motorola should not prevent this action from proceeding against the attorney defendants. Rather, I believe that a final termination of Motorola's claims against Elsco occurred for our purposes on January 10, 1991, when the District Court granted Elsco's Motion for Summary Judgment. This grant of summary judgment resolved, in Elsco's favor, all claims concerning the attorney defendants' actions in obtaining the ex parte seizure order. Motorola's agreement not to pursue an appeal of the summary judgment decision does not change the fact that the District Court had concluded that the actions taken against Elsco had no merit.

I give great weight to the above-quoted language in the settlement agreement specifically preserving the claims against the attorney defendants. Although the Majority does not consider this passage to be determinative, I cannot accept the conclusion that this language is without effect.

Because I would conclude that the claim was terminated in Elsco's favor by the District Court's grant of summary judgment, I would find that the Dragonetti Act claim remains viable, and would therefore remand this matter for trial. Hence this dissent.